**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Rent-A-Wreck of America, Inc., *et al.*,[1] | ) | |
| | ) | Case No. 17-11592 (LSS) |
| Debtors. | ) | |
| | ) | (Joint Administration Pending) |
| | ) | **Re: Docket Nos. 9 and 30** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507 (I)
APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH
COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE
PROTECTION, (V) MODIFYING AUTOMATIC STAY,
AND (VI) SCHEDULING A FINAL HEARING**

Upon the motion (the "DIP Motion")[2] of Rent-A-Wreck of America, Inc. ("RAWA") and

Bundy American, LLC ("Bundy", each a "Debtor" and collectively, the "Debtors") in the above-

captioned Chapter 11 cases (collectively with any successor cases, the "Cases"), pursuant to

Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry

of an interim order (this "Interim Order") *inter alia*:

(i)    authorizing the Debtors to obtain secured postpetition financing on a superpriority

basis (the "DIP Facility") pursuant to the terms and conditions of that certain Debtor In

Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from

---

[1]    The Debtors in these proceedings, along with the last four digits of each Debtor's federal tax identification
number, are Rent-A-Wreck of America, Inc. (6056) and Bundy American, LLC (5071). The Debtors'
corporate headquarters and the service address for each Debtor is 11411 Rockville Pike, Rockville, MD
20852.

[2]    Any capitalized terms not defined herein shall have the meanings ascribed to such terms in the DIP Motion.

time to time, the "DIP Agreement") by, between and among the Debtors and J.J.F. Management Services, Inc. (the "Lender"), substantially in the form of **Exhibit "1"** annexed hereto;

(ii)     authorizing the Debtors to execute and deliver the DIP Agreement, a promissory note and borrowing certificate(s) in accordance with the provisions of the DIP Agreement as well as documents required to perfect the liens provided to the Lender hereunder the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)    granting the DIP Facility and all obligations owing thereunder and under the DIP Documents to the Lender (collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in this Case and any Successor Case (as defined herein);

(iv)    granting to the Lender, automatically perfected security interests in and liens upon all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(v)     authorizing and directing the Debtors to pay the principal, interest, reasonable fees, expenses, and other amounts payable under the DIP Documents as such become due, including, without limitation, closing fees and the reasonable fees and disbursements of the attorneys, advisers, accountants, and other consultants of the Lender, all to the extent provided in and in accordance with the terms of the DIP Documents;

(vi)    authorizing the use of Cash Collateral of the Lender under the Prepetition Credit Documents (each as defined herein), including the use of Cash Collateral to pay intercompany expenses in accordance with the Approved Budget (a copy of the Approved Budget is attached

hereto as **Exhibit "2"**), and providing adequate protection to the Lender for any Diminution in Value of its interests in the Prepetition Collateral, including the Cash Collateral (each as defined herein);

(vii)    vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order, as limited pursuant hereto; and

(viii)    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the *Declaration of Gregg Steinbarth in Support of Chapter 11 Petitions and Requests for First-Day Relief*, the DIP Documents, and the evidence submitted at the interim hearing on the DIP Motion (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and the Debtors have represented that they believe they are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests in and liens on the

property of the estates on which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date*.  On July 24, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these Cases.

B.    *Debtors-in-Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors-in-possession pursuant to Sections 1107 and 1008 of the Bankruptcy Code.  No trustee, committee or examiner has been appointed in these Cases.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Committee Formation*.  As of the date hereof, the United States Trustee (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (the "Statutory Committee").

E.    *The Debtors' Stipulations*.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 31

hereof, the Debtors admit, stipulate, acknowledge, and agree that (collectively, paragraphs E(i) through E(xi) hereof shall be referred to herein as the "Debtors' Stipulations"):

(i)     *Prepetition Secured Claims.*  Pursuant to that certain Loan and Security Agreement, dated as of March 31, 2006, between RAWA and Lender and that certain Bundy Guaranty Agreement dated as of March 31, 2006 between Bundy and Lender (all as they may have been amended, supplemented, restated, or otherwise modified prior to the Petition Date, and together with all related loan and security documents, the "Prepetition Credit Documents"), the Lender provided a loan facility to or for the benefit of the Debtors (the "Prepetition Facility"). The amount due under the Prepetition Facility as of June 30, 2017 was principal of $2,476,696.47 and interest accrued through June 30, 2017 of $495,271. (the "Prepetition Obligations").

(ii)    *Prepetition Collateral.*  To secure the Prepetition Obligations, the Debtors granted to the Lender security interests in and liens (the "Prepetition Liens") on all of the assets of the Debtors described in the Prepetition Credit Documents (the "Prepetition Collateral").

(iii)   *The Prepetition Liens.*  The Prepetition Liens on the Prepetition Collateral were perfected as of the Petition Date.

(iv)    *Cash Collateral.*  All of Debtors' cash, including the cash in its deposit accounts, wherever located, that is proceeds of Prepetition Collateral, constitutes the Cash Collateral of the Lender.

(v)     *Default by the Debtors.*  The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Credit Documents.

F.    _Findings Regarding Postpetition Financing._

(i)    _Request for Postpetition Financing._  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer their Cases and fund their operations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the Lender, and notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    _Priming of Prepetition Liens._  The priming of the Prepetition Liens on the Prepetition Collateral under Section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of the estates and their creditors.  The Lender is entitled to receive adequate protection as set forth in this Interim Order, pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, for any diminution in the value of its interests in the Prepetition Collateral (including Cash Collateral), if any, resulting from the Debtors' use, sale, or lease (or other decline in value) of such collateral, the imposition of the automatic stay, the priming of the Prepetition Liens on the Prepetition Collateral, and the subordination to the Carve Out, as defined below (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

(iii)    _Need for Postpetition Financing and Use of Cash Collateral._  The Debtors' need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to

finance their operations, maintain business relationships with their vendors, suppliers, and customers, to pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and their creditors, and the possibility for a reorganization. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv) *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors believe that they are unable to obtain financing from sources other than the Lender on terms more favorable than the DIP Facility. The Debtors also believe that they would not be able to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors also believe that they would be unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in Section 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Therefore, Debtors believe that financing on a postpetition basis is not otherwise available without granting the Lender: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 7 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Interim Order.

(v) *Use of Proceeds of the DIP Facility.* As a condition to entry into the DIP Agreement, the extension of credit under the DIP Facility and the authorization to use Cash

Collateral, the Lender and the Debtors have agreed that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents and in accordance with the Approved Budget (as defined in the DIP Agreement and as the same may be modified from time to time consistent with the terms of the DIP Documents, the "Approved Budget"), solely for (a) working capital and other general corporate purposes, (b) permitted payment of costs of administration of the Cases, and (c) payment of such prepetition expenses as consented to by the Lender, in its sole discretion, and as approved by the Court.

G.    *Adequate Protection*.  The Lender is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the Prepetition Collateral (including Cash Collateral).  Pursuant to Sections 361, 363, and 507(b) of the Bankruptcy Code, as adequate protection, the Lender will receive (i) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 hereof, and (ii) ongoing payment of the reasonable fees, costs, and expenses, including, without limitation, legal and other professionals' fees and expenses, subject to the right of parties in interest pursuant to Section 506(b) of the Bankruptcy Code.

H.    *Sections 506(c) and 552(b)*.  In light of (i) the Lender's agreement to subordinate its liens and superpriority claims to the Carve Out the Lender is entitled to, subject to entry of a Final Order, a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order, the Lender is entitled to a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

I.       *Good Faith of the Lender*.

(i)       *Willingness to Provide Financing.*  The Lender has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the Lender is extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the Lender's claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in Section 364(e) of the Bankruptcy Code such that the reversal or modification on appeal of this Interim Order shall not affect the validity of any debt so incurred, or any priority or lien so granted, whether or not the Lender knew of the pendency of the appeal, unless the authorizations herein are stayed pending appeal.

(ii)      *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length by the Debtors and the Lender.  Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been so allowed, advanced, made, used, or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the Lender is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

J.     *Good Cause; Immediate Entry*.   The relief requested in the DIP Motion is necessary, essential and appropriate, and is in the best interests of and will benefit the Debtors, their estate, and their creditors and equity holders, as its implementation will, *inter alia*, provide the Debtors with the necessary liquidity to (i) minimize the disruption to the Debtors' business and ongoing operations, (ii) preserve and maximize the value of the Debtors' estates for the benefit of all of the Debtors' creditors and equity holders, and (iii) avoid immediate and irreparable harm to the Debtors, their estates, their creditors and equity holders, their businesses, their employees, and their assets.   Thus, sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

K.     *Notice*.   Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee; (ii) all relevant taxing authorities; (iii) those parties listed on the consolidated list of creditors holding the twenty (20) largest unsecured claims against the Debtors, as identified in their chapter 11 petitions; (iv) counsel to the Lender; and (v) all persons or entities known to the Debtors that have asserted a lien or interest in any of the DIP Collateral.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.      Interim Financing Approved.  The DIP Motion is granted, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled.  All objections to the Interim Financing or entry of the Interim Order, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      Authorization of the DIP Financing.   Subject to the limits on Debtors' authorization to borrow contained in this Interim Order, the DIP Facility is approved in the maximum amount of $100,000 under this Interim Order.   The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Documents.   All collections and proceeds, whether ordinary course or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.   Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

4.      Authorization to Borrow.  Until the DIP Termination Date (as defined herein), and subject to the terms and conditions set forth in the DIP Documents, DIP Facility, and this Interim Order and the Approved Budget, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to obtain extensions of credit under the

DIP Facility prior to the entry of the Final Order up to the aggregate principal amount of $100,000.00 (the "Interim Financing"), provided, however, that the Debtors shall only borrow under the DIP Facility when necessary to fund ordinary course business operations and in accordance with the Approved Budget.

5.      DIP Obligations.  The DIP Obligations shall be enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in these Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of these Cases, or in any other proceedings superseding or related to either of the foregoing (collectively, the "Successor Cases").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the DIP Termination Date, except as otherwise provided herein.

6.      Postpetition Liens.  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the Lender is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens upon (collectively, the "DIP Liens") all personal property, real property, assets, and rights of the Debtors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof, whether tangible or intangible, including, without limitation, (a) all personal property, including intellectual property, and fixture property of every kind and nature, including all goods (including inventory, equipment, and any accessions thereto); (b) all instruments, including promissory notes; (c) all documents, including, if applicable, electronic documents; (d) all accounts; (e) all books and records; (f) all chattel paper, whether tangible or electronic; (g) all deposit accounts; (h) all letters of credit and letter of credit rights, whether or

not the letter of credit is evidenced by a writing; (i) all commercial tort claims; (j) all securities and all other investment property; (k) all intellectual property; (l) all supporting obligations; (m) all money and any other contract rights or rights to the payment of money; (n) all insurance claims and proceeds; (o) all general intangibles, including all payment intangibles; and (p) the Prepetition Collateral (collectively, the "DIP Collateral"). For purposes of clarification, any and all causes of action of the Debtor to avoid a transfer of property or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 502, 510, 542, 544, 545, 547-553 of the Bankruptcy Code or under similar or related state or federal statutes and common law ("Avoidance Actions") and the proceeds thereof shall not be subject to the DIP Liens.

7.    DIP Lien Priority.  The DIP Liens securing the DIP Obligations are valid, binding, continuing, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien or claim to any of the DIP Collateral, except that the DIP Liens shall be junior only to the Carve Out.  Pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be senior to the Prepetition Liens and the Adequate Protection Liens (as defined herein) on all DIP Collateral. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, upon the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estates pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

8.   <u>Superpriority Claims</u>. Upon entry of this Interim Order, and subject to the Carve-Out, the Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any Successor Case (collectively, the "<u>DIP Superpriority Claim</u>") for all DIP Obligations:  (a) except as set forth herein, and excluding the proceeds of any Avoidance Actions, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representatives to the extent permitted by law.  Notwithstanding the foregoing, the DIP Superpriority Claim shall be subject and subordinate to the Carve Out.

9.   <u>No Obligations to Extend Credit</u>.  The Lender shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived in writing by the Lender in its sole discretion.

10.   <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents, and in compliance with the Approved Budget, subject to the permitted variances set forth in the DIP Documents.  Immediately upon entry of the Interim

Order, the Debtors are authorized to draw upon the DIP Facility subject to the terms and conditions of this Interim Order and the DIP Documents.

**Authorization to Use Cash Collateral**

11.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order, the DIP Facility, and the DIP Documents, and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral until the DIP Termination Date; provided, however, that actual expenditures shown for each week of the Budget may vary by up to ten percent (10%) above the amounts shown on the Approved Budget and, provided, further, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral to pay payroll, trust fund taxes (irrespective, in the case of payroll and trust fund taxes, of when the same shall be actually due and payable) and other expenses in accordance with the Approved Budget and to maintain the DIP Collateral pursuant to the provisions of this Interim Order, and as otherwise agreed by the Lender, in its sole discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Approved Budget.

12.    Adequate Protection Liens.

(a)    Adequate Protection Liens.  Pursuant to Sections 361, 363(e), and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Lender in the Prepetition Collateral, if any, against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral and other Prepetition Collateral, and the imposition of the automatic stay, the Debtors hereby grant to the

Lender continuing valid, binding, enforceable, and perfected postpetition security interests in and liens on the DIP Collateral with the same validity and priority as existed on the Petition Date and subject to the Carve Out (the "Adequate Protection Liens") The Adequate Protection Liens shall not extend to Avoidance Actions or the proceeds thereof.

      (b)     Priority of Adequate Protection Liens.

      (i)     The Adequate Protection Liens shall be junior only to: (A) the Carve Out; and (B) the DIP Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

      (ii)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of the Cases or Successor Cases. No lien or interest avoided and preserved for the benefit of the estates pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

      (iii)     The Adequate Protection Liens shall be subject to the reservation of rights set forth in paragraph 31 of this Interim Order.

    13.    Adequate Protection Superpriority Claims.

      (a)     Superpriority Claim. As further adequate protection of the interests of the Lender in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral on account of the granting of the DIP Liens, the Debtors' use of Cash Collateral, the use, sale, or lease of any other Prepetition Collateral, and the imposition of the automatic stay, to the extent the Lender's interest in the Prepetition Collateral is determined to be

valid, enforceable and unavoidable  the Lender is hereby granted, as and to the extent provided by Section 507(b) of the Bankruptcy Code, subject to the Carve Out, and excluding the proceeds of Avoidance Actions, an allowed superpriority administrative expense claim in the Cases and any Successor Cases (the "Adequate Protection Superpriority Claim").

(b)      Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114; provided, however, that:  (i) the Adequate Protection Superpriority Claims shall be junior to the DIP Superpriority Claim; (ii) the Adequate Protection Superpriority Claims shall be junior to the Carve Out; and (iii) the Adequate Protection Superpriority Claims shall be subject to the reservation of rights set forth in paragraph 31 of this Interim Order.

14.      Adequate Protection Payments and Protections.  As further adequate protection, subject to the reservation of rights set forth in paragraph 31 of this Interim Order, the Debtors are authorized and directed to provide adequate protection in the form of continued maintenance and insurance of the Prepetition Collateral and the DIP Collateral in amounts and for the risks, and by the entities, as required under the prepetition loan documents, the DIP Documents, and this Interim Order.

15.      Section 507(b) Reservation.  Nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection

provided to the Lender hereunder is insufficient to compensate for any Diminution in Value of its interests in the Prepetition Collateral during the Cases or any Successor Cases.

**Provisions Common to DIP Financing**
**and use of Cash Collateral Authorizations**

16. <u>Amendments of the DIP Documents</u>. The DIP Documents may from time to time be amended, modified, or supplemented by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is (i) in accordance with the DIP Documents, (ii) beneficial to the Debtors, and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification, or supplement is provided to counsel to a Statutory Committee, if appointed, and the U.S. Trustee at least two (2) business days prior to the effective date of such amendment, modification, or supplement; and (c) the amendment, modification, or supplement is filed with the Court; <u>provided</u>, <u>however</u>, that consent of the Statutory Committee or the U.S. Trustee, and approval of the Court, is not necessary to effectuate any such amendment, modification, or supplement; and <u>provided further</u> that such amendments, modifications, or supplements shall be without prejudice to the right of any party in interest to be heard.

17. <u>Budget Maintenance</u>. The Approved Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the Lender and approved by the Lender in its reasonable discretion. The Approved Budget may be amended or modified in writing from time to time only with the written consent of the Lender in its reasonable discretion. Any amended Approved Budget shall be filed with the Court and served upon parties in interest.

18. <u>Modification of the Automatic Stay</u>. The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and

provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the Lender under the DIP Documents, the DIP Facility, and this Interim Order; and (d) authorize the Debtors to pay and the Lender to retain and apply payments made in accordance with the terms of this Interim Order.

19.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document, which may otherwise be required under the law or regulation of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the Lender to the priorities granted herein. Notwithstanding the foregoing, the Lender is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.

20.    Proceeds of Subsequent Financing.  If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Section 364(b), 364(c), or 364(d) of the Bankruptcy Code or in violation of the DIP Documents at any time prior to the indefeasible repayment in full of all of the DIP Obligations and the termination of the Lender's obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors assets and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all cash proceeds derived from such credit or debt shall immediately be turned over to the Lender to be applied as set forth in the DIP Documents solely to the extent necessary to indefeasibly repay in full the DIP Obligations.

21.    Maintenance of DIP Collateral.  In addition to maintaining the insurance required pursuant to the United States Trustee Operating Guidelines, until the indefeasible payment in full of all DIP Obligations and all Prepetition Credit Obligations and the termination of the Lender's obligation to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Credit Facilities, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by any order that may be entered by the Court, to which the Lender has first agreed, or as otherwise required by the DIP Documents; provided, however, that the foregoing obligations of the Debtors shall be conditioned upon the Lender providing the Debtors with adequate funding to fulfill such obligations.

22.    DIP Termination Date.  On the DIP Termination Date, (a) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility will terminate, and (b) all authority to use Cash Collateral shall cease, provided,

however, that during the Remedies Notice Period, the Debtors may use Cash Collateral to pay payroll, trust fund taxes (irrespective, in the case of payroll and trust fund taxes, of when the same shall be actually due and payable) and other expenses in accordance with the Approved Budget and to maintain the DIP Collateral pursuant to the provisions of this Interim Order, and as otherwise agreed by the Lender, in its sole discretion. For purposes of this Interim Order, the "DIP Termination Date" shall mean the Termination Date as defined in the DIP Credit Agreement.

23.     Events of Default.  The occurrence of an "Event of Default" under the DIP Documents shall constitute an Event of Default under this Interim Order, unless waived in writing by the Lender.  Notwithstanding any provision of the Motion or DIP Credit Agreement, references to any "Loan Document" other than the DIP Documents, and deficiencies thereunder shall not constitute grounds for an Event of Default under the provisions of this Order.

24.     Rights and Remedies Upon Event of Default.  Immediately upon the occurrence and during the continuation of an Event of Default, (i) the Lender may declare (1) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (2) the termination, reduction, or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, and (3) the termination of the DIP Agreement and any other DIP Document as to any future liability or obligation of the Lender, but without affecting any of the DIP Liens or the DIP Obligations; and (ii) the Lender may declare a termination, reduction, or restriction on the ability of the Debtors to use any Cash Collateral derived solely from the proceeds of the DIP Collateral, except as otherwise provided in this Order (any such declaration, shall be referred to herein as "Termination Declaration").  The Termination Declaration shall be given by hand delivery and facsimile (or other electronic means) to counsel

to the Debtors, respective counsel to the Statutory Committee, if any, and the U.S. Trustee (and the earliest date any such Termination Declaration is provided as required herein shall be referred to herein as the "Termination Declaration Date"). Any automatic stay otherwise applicable to the Lender is hereby modified so that five (5) business days after the Termination Declaration Date (the "Remedies Notice Period"), the Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens, subject to the Carve Out. During the Remedies Notice Period, the Debtors and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court. Unless the Court determines otherwise, the automatic stay, as to the Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the Lender shall be permitted to exercise all remedies set forth herein, in the DIP Documents, and as otherwise available at law without further order or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest or any other rights and remedies granted to the Lender pursuant to the DIP Agreement, the DIP Documents, or this Interim Order.

25.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, the Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code, such that any such reversal

or modification on appeal of this Interim Order shall not affect the validity of any debt so incurred, or any priority or lien so granted, whether or not the Lender knew of the pendency of the appeal, unless the authorizations herein are stayed pending appeal.

26.    Proofs of Claim.    Subject to entry of a Final Order, the Lender will not be required to file proofs of claim in the Cases or any Successor Cases for any claim allowed herein. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases or any Successor Cases to the contrary, the Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in the Cases or any Successor Cases for any claim allowed herein.    Any order entered by the Court in relation to the establishment of a bar date in the Cases or any Successor Cases shall not apply to the Lender.

27.    Rights of Access and Information.    Without limiting the rights of access and information afforded the Lender under the DIP Documents, the Debtors shall be, and hereby are, required to, upon reasonable advance written notice, afford representatives, agents, and/or employees of the Lender reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and the Prepetition Credit Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.    In addition, the Debtors authorizes their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the Lender all such information (exclusive of any such information subject to privilege or such other similar protection) as may be reasonably requested with respect to the business, results of operations, and financial condition of the Debtors.

28.    Carve Out.

(a)    Carve Out. As used in this Interim Order, the "Carve Out" means, upon the occurrence of the Termination Declaration Date, the following expenses: (i) all statutory fees payable to the clerk of the Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) to the extent ultimately allowed by the Bankruptcy Court, (A) the unpaid professional fees, expenses and disbursements incurred on or after the Termination Declaration Date by any professionals retained by final order of the Court (which order has not been vacated or stayed, unless the stay has been vacated) under Sections 327, 328 or 1103(a) of the Bankruptcy Code (collectively, the "Case Professionals"), or any Statutory Committee appointed in the Cases pursuant to Section 1102 of the Bankruptcy Code ( "Statutory Committee") in an aggregate amount (the "Case Professionals Carve Out") not to exceed $125,000 (including the reimbursement of expenses allowed by the Bankruptcy Court incurred by any Statutory Committee member in the performance of its duties, but excluding fees and expenses of third party professionals employed by such members), plus (B) to the extent the following described fees, expenses and disbursements remain unpaid as of the Termination Declaration Date, the lesser of (I) all such fees, expenses and disbursements incurred prior to the Termination Declaration Date and (II) the total amount included for such fees, expenses and disbursements in the Approved Budget for the period prior to the Termination Declaration Date (collectively, the "Allowed Professional Fees").

(b)    No Direct Obligation to Pay Professional Fees. The Lender shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any Chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the Lender in any way to pay compensation to or to reimburse expenses of any Case

Professional, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date. Prior to the occurrence of the Termination Declaration Date, the Debtors shall be permitted to pay Allowed Professional Fees, solely to the extent provided in accordance with the Approved Budget. The amounts paid in accordance with the Approved Budget shall not reduce the Carve Out.

(d)     Payment of Carve Out After Termination Declaration Date. Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees for services rendered after the Termination Declaration Date (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the Case Professionals Carve Out on a dollar-for-dollar basis. Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code, and applicable law.

29.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral, and the Case Professionals Carve Out. The DIP Facility, the DIP Collateral, the Cash Collateral, and the Case Professionals Carve Out may not be used in connection with: (a) subject to the limited use of Cash Collateral set forth in paragraph 11 above after the occurrence of the DIP Termination Date, preventing, hindering, or delaying any of the Lender's or the Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consent of the Lender; (c) using or seeking to use any insurance proceeds constituting DIP

Collateral without the consent of the Lender; (d) objecting or challenging in any way any claims, liens, DIP Collateral (including Cash Collateral), or Prepetition Collateral (including Cash Collateral), held by or on behalf of the Lender; (e) asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the Lenders, the Lender, or any of its affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees; or (f) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Credit Obligations, the Prepetition Liens, or any other rights or interests of any of the Lender or the Lender; provided, however, that the Case Professionals Carve Out and such collateral proceeds and loans under the DIP Documents may be used for allowed fees and expenses, in an amount not to exceed $15,000 in the aggregate, incurred solely by the Statutory Committee, if appointed, in investigating the validity, enforceability, perfection, priority, or extent of the Prepetition Liens during the Challenge Period (as defined herein); and provided, further, that during the Remedies Notice Period, the Debtors may use Cash Collateral to pay payroll, trust fund taxes (irrespective, in the case of payroll and trust fund taxes, when the same shall be actually due and payable) and other expenses in accordance with the Approved Budget and to maintain the DIP Collateral pursuant to the terms of this Interim Order, and as otherwise agreed by the Lender, in its sole discretion.

30.    Payment of Compensation.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the Lender to object to the allowance and payment of such fees and expenses.

31.    <u>Reservation of Rights and Bar of Challenges and Claims</u>. Nothing in this Interim Order or the DIP Documents shall prejudice the rights of the Debtor, the Statutory Committee, if any, a successor trustee, and any other party in interest with requisite standing, to seek to object to or to challenge the findings, the Debtors' Stipulations, or any other stipulations herein, including, but not limited to, those in relation to: (a) the validity, extent, priority, or perfection of the security interests, and liens of the Lender with respect to the Prepetition Collateral; or (b) the validity, allowability, priority, fully-secured status, or amount of the Prepetition Credit Obligations. Except for the Debtor, a party must commence, as appropriate, without limitation, any claim against the Lenders in the nature of a setoff, counterclaim, or defense to the Prepetition Credit Obligations within seventy-five (75) calendar days following the date of entry of this Interim Order, or, if a Statutory Committee is formed, at least sixty (60) days from the date of its formation (the "<u>Challenge Period</u>"). Upon the expiration of such Challenge Period, to the extent not otherwise waived or barred, any and all such challenges and objections by any party other than the Debtor (including, without limitation, the Statutory Committee, any Chapter 11 trustee, and/or any examiner appointed in these Cases, and any Chapter 7 trustee and/or examiner appointed in any Successor Cases), shall be deemed to be forever waived and barred; Upon a successful challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy. Notwithstanding anything herein to the contrary, the Debtors' right to challenge the Prepetition Liens or claims of the Lender is hereby preserved and is not subject to the deadlines set forth herein.

32.    <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

33.    <u>Section 506(c) Claims</u>.  Subject to entry of a Final Order, no costs or expenses of administration, which have been or may be incurred in the Cases at any time, shall be charged against the Lender or any of its claims, the DIP Collateral, or the Prepetition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

34.    <u>No Marshaling/Application of Proceeds</u>.  Subject to entry of a Final Order, the Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the terms of the DIP Credit Documents notwithstanding any other agreement or provision to the contrary, <u>provided</u>, <u>however</u>, that nothing herein shall impair the rights of the Lender with respect to the DIP Collateral.

35.    <u>Section 552(b)</u>.  Subject to entry of a Final Order, the Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the Lender, with respect to the proceeds, product, offspring, or profits of any of the Prepetition Collateral.

36.    <u>Discharge Waiver</u>.  The DIP Obligations and the Prepetition Credit Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of Section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtors shall not propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any

confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on or prior to the earlier to occur of the effective date of such plan of reorganization or sale and the DIP Termination Date, of all DIP Obligations.

37.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Lender's right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of the Cases or Successor Cases, conversion of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Lender.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', the Statutory Committee's, or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of the Statutory Committee, if any, the U.S. Trustee, and any other party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Debtors' Chapter 11 Cases.

38.    No Waiver by Failure to Seek Relief.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver

of any of the rights hereunder, thereunder, or otherwise of the Lender, the Debtors, the Statutory Committee, or any party in interest.

39.    <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court, the terms and provision of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lender, all other creditors of any of the Debtors, any Statutory Committee or any other court-appointed committee in the Cases, and all other parties in interest and their respective successor and assigns, including any trustee or other fiduciary hereafter appointed in the Cases, or any Successor Cases.

40.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization or liquidation in the Cases; (b) converting the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Cases or any Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Lender pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain its priority as provided by this Interim Order until, in respect of the DIP Facility, all the DIP Obligations, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by its terms), and all commitments to extend credit under the DIP Facility are terminated.  In addition, the terms and provisions of this Interim Order shall continue in full

force and effect for the benefit of the Lender notwithstanding the repayment in full of or termination of the DIP Obligations.

41.    <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for August 11, 2017 at 10:00 a.m. before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in Courtroom No. 2nd at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801. On or before July 31, 2017, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the DIP Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; and (c) counsel for the Statutory Committee, if appointed. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on August 9, 2017 at 4:00 p.m. (prevailing Eastern time), which objections shall be served so as to be received on or before such date by:  (i) counsel to the Lenders, Cross & Simon, LLC, 1105 North Market Street, Suite 901, Wilmington, DE 19801, Attention: Christopher P. Simon, Esq. and Kevin S. Mann, Esq.; (ii) counsel for the Debtors, Saul Ewing LLP, 1201 N. Market Street, Suite 2300, Wilmington, DE 19801, Attention: Mark Minuti, Esq., and Quarles & Brady, LLP, 300 N. LaSalle Street, Suite 4000, Chicago, IL 60654, Attention: Faye Feinstein, Esq. and Christopher Combest, Esq.; (iii) counsel to the Statutory Committee (if any); and (iv) the United States Trustee.

42.    *Nunc Pro Tunc* Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

43.    Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: _July 31_____, 2017
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE